UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FOR PUBLICATION

ELISA ENCARNACION o/b/o ARLENE
GEORGE, et al.,

Plaintiffs,

-v-

No. 03 Civ. 6620 (LTS)(THK)

MICHAEL J. ASTRUE, Commissioner of
Social Security,

Defendant.

OPINION AND ORDER



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____ JUN 2 2 2007
DATE FILED: _____

APPEARANCES:

CENTER FOR DISABILITY ADVOCACY
RIGHTS, INC.
  By: James M. Baker, Esq.
      Christopher James Bowes, Esq.
841 Broadway, Suite 605
New York, New York 10003

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
  By: Jeffrey S. Trachtman, Esq.
      Michael J. Sternhell, Esq.
919 Third Avenue
New York, New York 10022

NORTHERN MANHATTAN
IMPROVEMENT CORPORATION LEGAL
SERVICES
  By: Kenneth Rosenfeld, Esq.
      Matthew J. Chachere, Esq.
76 Wadsworth Avenue
New York, New York 10033

*Attorneys for Plaintiffs*

MICHAEL J. GARCIA, UNITED STATES
ATTORNEY, SOUTHERN DISTRICT OF
NEW YORK
  By: Susan D. Baird, Esq.
86 Chambers Street, 3rd Floor
New York, New York 10007

*Attorneys for Defendant*

LAURA TAYLOR SWAIN, United States District Judge

Defendant Michael J. Astrue, Commissioner of the Social Security

Administration ("Commissioner," and "SSA," respectively),[1] moves the Court for summary

judgment in his favor in this action challenging the Commissioner's interpretation of regulations

promulgated under the Social Security Act and relating to the determination of disabilities in

children for the purpose of awarding benefits under the Social Security Income for the Aged,

Blind, and Disabled Program, 42 U.S.C. §§ 1381-1383f ("SSI"). Defendant also moves for

dismissal of Plaintiff Arlene George's claim on the basis of a lack of subject matter jurisdiction,

for the dismissal of Plaintiff Michelle Tavaras' claim as untimely and as moot, for the dismissal

of Plaintiff Hortensia Lacayo's claim on the basis of a lack of jurisdiction and mootness, and of

Plaintiff Ben-Hemir Collado's claim on the basis of lack of jurisdiction. Plaintiffs Arlene

George, Michelle Tavaras, Hortensia Lacayo, Mathew Lacayo, and Ben-Hemir[2] (collectively,

"Plaintiffs") have filed a cross-motion for summary judgment, as well as a motion for leave to

file an amended class action complaint. Plaintiffs have also filed a motion for class certification.

In this opinion, the Court will address each of the motions.

The Court has jurisdiction of Plaintiffs' claims pursuant to 42 U.S.C. § 405(g).

Familiarity with the Court's March 22, 2002, opinion in Encarnacion v. Barnhart, 191 F. Supp.

2d 463 (S.D.N.Y. 2002) (hereinafter, "Encarnacion I"), and the Second Circuit's May 28, 2003,

opinion in Encarnacion v. Barnhart, 331 F.3d 78 (2d Cir. 2003) (hereinafter, "Encarnacion II"), is

---

[1]     Commissioner Astrue is hereby substituted for former Commissioner Barnhart as
        the party defendant, pursuant to Fed. R. Civ. P. 25(d)(1).

[2]     As the parties have done in their papers, the Court refers to the named Plaintiffs
        here by reference to the persons on whose behalf the underlying benefit
        applications have been made.

assumed.

## BACKGROUND

This is not the first time that the broad issues raised in this case have come before this Court. On September 1, 2000, Plaintiff George and others filed a complaint raising substantially similar claims concerning the Commissioner's interpretation of the provisions of the Act and SSA regulations governing childhood disability determinations, and thereafter moved for class certification, while Defendant cross-moved for judgment on the pleadings. The Court granted Defendant's motion for judgment on the pleadings, finding that the Commissioner's interpretation was reasonable despite the fact that the Commissioner's policy of not combining limitations across functional domains in making disability determinations was not expressly stated in the regulations. Encarnacion I, 191 F. Supp. 2d at 474. The Court found Chevron deference to the Commissioner's interpretation warranted.[3] Id. at 472. The Court denied the plaintiffs' motion for class certification.

On appeal, the Second Circuit affirmed Encarnacion I, finding the Commissioner's functional domain-based framework for considering the impact of impairments

---

[3]     See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984) (holding that "considerable weight [is] afforded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principal of deference to administrative proceedings has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulation") (citation and quotation marks omitted); see also Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 273 F.3d 481, 491 (2d Cir. 2001).

in connection with disability determinations consistent with the requirements of the Act and regulations. Encarnacion II, 331 F.3d at 80. Specifically, the Circuit Court found that the SSA's domain-focused methodology and interpretation is not violative of the statute or regulations on its face because it leaves room for consideration of impairments in multiple domains and for the final assessment of the level of limitation in a particular domain to be influenced by the impact of an impairment, even if that impairment only resulted in a less than marked limitation in another domain. Reviewing the Commissioner's policy with considerable deference, the Circuit Court held that the Commissioner's interpretation of his own regulations "is not contrary to law if there are other reasonable methods of giving effect to the 'combined impact' mandate other than by adding limitations across domains." Id. at 86 (emphasis supplied).

However, the Encarnacion II Court made clear "that each of a child SSI claimant's impairments must be taken into account in SSA's bottom-line assessment of the child's disability." Id. at 92. The Court of Appeals explicitly left open the opportunity for further litigation on the factual issue of whether the Commissioner's implementation of the regulations fails as a practical matter to "look comprehensively" at a childhood disability benefit claimant and account for the "interactive and cumulative effects" of the claimant's impairments and related functional limitations, as contemplated by the relevant regulations. See 20 C.F.R. §§ 416.924a(A)(4), 416.926a; Encarnacion II, 331 F.3d at 86 (observing that the complaint in that action might have survived the pleading stage dismissal motion had the plaintiffs alleged that: (1) the Commissioner's policies, or any other alternative "combined impact" method, "are ineffective either on their face or as applied;" or (2) that "examiners are [not] in fact free to account for the 'interactive and cumulative' effects of all the claimant's impairments").

In the instant Complaint, Plaintiffs allege principally that the Commissioner in fact prevents disability adjudicators from "look[ing] comprehensively at the claimant, and account[ing] for the interactive and cumulative effects of limitations in other domains." (Compl. ¶ 57.)

Plaintiffs' factual proffers in support of their summary judgment motion consist of an expert witness declaration by school psychologist, and numerous SSA regulations and procedural materials that were also addressed in the prior litigation. Plaintiffs request relief in the form of a declaratory judgment confirming their right "under the Act and regulations, to have all of their impairments and their resulting functional limitations considered throughout the disability determination process and not just those impairments that impose limitations that are 'marked' or 'extreme.'" (Compl. ¶ 5.) Plaintiffs also seek an injunction preventing the Commissioner from continuing to deny and/or terminate the applications of children seeking SSI benefits without full and proper consideration of the combined effects of impairments across domains. (Id. ¶ 6.)

Plaintiffs also move, pursuant to Federal Rule of Civil Procedure 23, for certification of a class of plaintiffs defined as:

> all children who were denied SSI disability benefits on or after August 22, 1996 as a result of an application of the [Social Security] Commissioner's policy of forbidding adjudicators to assign any weight in the final determination of disability to impairments imposing "less than marked" functional limitations, or whose benefits were terminated based on such an application, or who may hereafter have their benefits denied or terminated based on such an application.

(Pls.' Mot. for Class. Cert. 5.) The parties' substantially simultaneous class certification and summary judgment motion practice was fully briefed in 2005.

The Court has carefully and thoroughly considered all of the extensive briefing in

this case.  For the following reasons: (1) Plaintiffs' motion for class certification is denied; (2)

Defendant's motion for summary judgment is granted; (3) Plaintiffs' motion for summary

judgment is denied; and (4) Plaintiffs' motion for leave to file an amended class action complaint

is denied.


## DISCUSSION

### Defendant's Application to Dismiss Certain Plaintiffs' Claims

In his cross-motion for summary judgment, Defendant argues that the claims of

each of the named Plaintiffs should be dismissed on procedural grounds.  Specifically,

Defendant argues that: the claims of Arlene George ("George") should be dismissed for lack of

exhaustion of remedies; the claims of Michelle Tavares ("Tavares") should be dismissed as

untimely and moot; the claims of Mathew Lacayo ("Lacayo") should be dismissed based on a

lack of the Court's jurisdiction and mootness; and the claims of Ben-Hemir Collado ("Collado")

should be dismissed based on a lack of the Court's jurisdiction.

Relating to the Defendant's mootness argument, all four lead Plaintiffs' claims

have been remanded to the Commissioner for rehearing on the issue of disability.  See

Encarnacion v. Barnhart, 00 Civ. 6597(LTS), 2003 WL 1344903 (S.D.N.Y. Mar. 19, 2003)

(Arlene George); Lora v Barnhart, 03 Civ. 9942(LTS) (Docket Entry No. 10, Aug. 16, 2004)

(Michelle Tavares); Lacayo v. Halter, 01 Civ. 2295(RMB) (Docket Entry No. 12, Dec. 1, 2004)

(Mathew Lacayo); Veloz v. Massanari, 01 Civ. 4776 (NB) (Docket Entry No. 7, Feb. 19, 2002)

(Ben-Hemir Collado).  However, as Defendant acknowledges, in a putative class action suit, the

parties' claims will not become moot until such time as the Commissioner provides them with

their benefits.  Furthermore, "[w]here class claims are inherently transitory, 'the termination of a

class representative's claim does not moot the claims of the unnamed members of the class.'"

Robidoux, 987 F.2d at 939 (quoting Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975)).  Class

claims are considered transitory where, as here, the Commissioner "will almost always be able to

[offer review on remand] before a plaintiff can obtain relief through litigation."  Id. at 939

(referring to litigation involving the Vermont Department of Social Welfare's delay in reviewing

public assistance benefits applications).  In addition, "[e]ven where the class is not certified until

after the claims of the individual class representatives have become moot, certification may be

deemed to relate back to the filing of the complaint in order to avoid mooting the entire

controversy."  Id.  Thus, the remands of the named Plaintiffs' benefit claims do not preclude their

pursuit of the class claims asserted here.

> ### Lacayo and Collado

Defendant argues that the undersigned lacks jurisdiction of the class claims

asserted by Lacayo and Collado because those plaintiffs' individual benefit claims are not before

the undersigned but, rather, are before Judges Berman and Buchwald of this District,

respectively.  Defendant argues that, because the claims of Lacayo and Collado are pending

before other judges within this District, their respective claims in this case should be dismissed.

Jurisdiction of the claims lies, however, within the Southern District of New York, and it is not

limited to any one particular judge.  "Individual judges of a single court do not have 'jurisdiction'

of matters before the court.  The Court as a whole does." United States v. Armstrong, 2003 WL

21436503, at *1 (S.D.N.Y. June 20, 2003).  Moreover, the interests of consistency and judicial

economy are served by consideration of their class claims in this litigation, as the undersigned is

thoroughly familiar with the issues raised by their class claims. Accordingly, the fact that Lacayo and Collado have individual claims pending in this District before other judges does not warrant dismissal of their claims asserted in this case, and Defendant's motion for summary judgment is denied insofar as it seeks dismissal of the claims of these two named Plaintiffs' claims.

Because two of the Plaintiffs' class claims are viable as a procedural matter and, for the reasons explained below, the class certification motion will be denied and summary judgment will be granted in Defendant's favor on the merits of the action, the Court declines to address Defendant's arguments for dismissal of the class claims asserted by the remaining named Plaintiffs.

## Plaintiffs' Motion for Class Certification

Plaintiffs move the Court to certify this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2). The Second Circuit "has specifically held that it is within a district court's discretion to reserve decision on a class certification motion pending disposition of a motion to dismiss." Benfield v. Mocatta Metals Corp., 1993 WL 148978, at *2 (S.D.N.Y. May 5, 1993), citing Christensen v. Kiewit-Murdock Investment Corp., 815 F.2d 206, 214 (2d Cir. 1987). The Second Circuit's ruling in Christensen logically must also apply to a district court's discretion to reserve decision on a class certification motion pending disposition of summary judgment motions.

For the reasons explained below in the discussion of the parties' arguments on the summary judgment motion practice, the Court finds that Plaintiffs have failed to raise a triable issue as to the fundamental premise both of their Complaint and of their proposed class

definition, namely that the Commissioner violates the rights of applicants for childhood disability benefits by failing entirely to consider, throughout the disability determination process, the cumulative and interactive effects of impairments that produce only moderate functional limitations within a particular domain. In light of this failure, the class as proposed to be defined, even if certified, would have no members. Under this rather unique set of circumstances, class certification would be futile and, accordingly, Plaintiffs' class certification motion is denied.

## Summary Judgment Motions

### Standard of Review

Summary judgment is to be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is considered material to summary judgment "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586-87 (1986)).

When cross-motions for summary judgment are filed, "the standard is the same as that for individual motions for summary judgment." Natural Res. Def. Council v. Evans, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." Id. (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

### Res Judicata

Defendant first argues that the doctrine of *res judicata* (claim preclusion) bars the Court's consideration of Plaintiffs' claims in this case because Encarnacion I precludes relitigation of the same claim in this action. However, in light of the Second Circuit's explicit statement leaving open the opportunity for further litigation on the factual issue of whether the Commissioner's implementation of the regulations fails as a practical matter to "look comprehensively" at a childhood disability benefit claimant and account for the "interactive and cumulative effects" of the claimant's impairments and related functional limitations, as contemplated by the relevant regulations, *res judicata* does not bar the instant action. See Encarnacion II, 331 F.3d at 89 n. 7.

### Applicability of *Chevron* Deference

In Encarnacion I, this Court held that what Plaintiffs have termed the Commissioner's "non-combination policy" (i.e., analyzing the severity of limitations within, rather than by combining, functional domains) is "patent" in its regulations and thus entitled to Chevron deference. Plaintiffs now assert that Encarnacion II "overrule[d]" the Court's Chevron

deference holding by finding that the Commissioner's non-combination policy was not readily apparent. (Pls.' Mem. at 38.) Alternatively, Plaintiffs make the conclusory argument that Chevron deference may not be afforded to Defendant because the SSA's non-combination policy is illegal and irrational. (Id.) Suffice it here to say, as to Plaintiff's argument that this Court's Chevron deference holding was overruled by the Second Circuit, that the appellate opinion in Encarnacion II recognized that the SSA "focus[es] on the combined effects of impairments *within* domains" *and* held Chevron deference appropriate. Encarnacion II, 331 F.3d at 87 (emphasis supplied).

As to Plaintiffs' argument that deference is inappropriate because the "non-combination" policy is irrational and illegal, the Court notes that Plaintiffs' argument assumes that the Commissioner's interpretation is illegal. It is up to the Court to determine whether the Commissioner's interpretation is illegal, and Chevron deference merely "provides the appropriate legal lens through which to [determine] the legality of the Agency interpretation . . . at issue." Barnhart v. Walton, 535 U.S. 212, 222 (2002).

### Plaintiffs' Claims in this Litigation

Encarnacion II, while upholding the dismissal of Plaintiff's challenge to the SSA's childhood disability determination regulations because the Circuit Court found the regulations "open to a reading in which examiners are in fact free to account for the 'interactive and cumulative' effects of all of the claimant's impairments," left open the opportunity for further litigation on the factual issue of whether the Commissioner's implementation of the regulations fails as a practical matter to look comprehensively at a childhood disability benefit

claimant and account for the interactive and cumulative effects of the claimant's impairments and

related functional limitations, as contemplated by the relevant regulations.  In their current

Complaint, Plaintiffs allege, inter alia, that

> [w]ith respect to . . . determinations of functional equivalence, the Commissioner has
> adopted an informal policy or interpretation of her regulations that forbids adjudicators to
> assign any weight in the final determination of disability, to impairments that impose
> 'less than marked' functional limitations.

(Compl. ¶4.)  Tracking an element of the Second Circuit's discussion in Encarnacion II, Plaintiffs

acknowledge that the Commissioner's policy forbids adjudicators "to add together less than

marked limitations from separate domains when determining whether a child satisfies the one

extreme or two marked limitation standard of disability," see 331 F.3d at 86, and further allege

that

> [t]he Commissioner . . . forbids adjudicators to adjust the level of limitation in any
> domain in any other manner in order to reflect the impact that other less than marked
> limitations may have on a child's overall level of functioning.  As a result, in many cases,
> the Commissioner assigns zero weight, in the ultimate decision whether or not to award
> benefits, to many impairments that significantly affect the child's overall level of
> functioning.

(Id.); cf. Encarnacion II, 331 F.3d at 88-90.  Similarly, Plaintiffs allege that

> [i]t has been the Commissioner's practice and policy to deny her adjudicators the power
> to adjust the level of a claimant's limitation within one or two domains to look
> comprehensively at the claimant, and account for the interactive and cumulative effect of
> limitations in other domains

(Compl. ¶57); cf. Encarnacion II, 331 F.3d at 89; and that

> [a]s a result of the Commissioner's practices and policies, . . . the Commissioner has
> denied benefits to thousands of children who do not have one extreme or two marked
> functional limitations but whose overall functional limitations are equally disabling and
> who are therefore eligible for benefits.

(Compl. ¶58.)

In support of their new factual contentions, Plaintiffs proffer the declaration of Kevin P. Dwyer, a nationally certified school psychologist. Mr. Dwyer opines that "[t]he Commissioner's method of determining functional equivalence, which ignores as 'less than marked' the supposedly 'minor' effects of some impairments, is irrational and unscientific"; that the Commissioner's definition of "marked" limitation "has set the bar so high that it excludes the effects of impairments that any clinician or diagnostician would consider anything but minor or dismissable"; and that "[c]onsequently, the Commissioner's method of determining functional equivalence undoubtedly results in the denial of benefits to many children who are as disabled, or more disabled, than some children who meet the 'two marked' or 'one extreme' functional limitation standard." (Dwyer Decl. ¶14.)

To the extent Mr. Dwyer's declaration, and Plaintiffs' allegations concerning invalidity of the Commissioner's domain-based methodology for determining functional equivalence, are intended to relitigate the issue of the facial validity of the Commissioner's policy under which, "once the examiner has assessed the level of limitation in each of the claimant's domains, moderate limitations drop out of the equation, and the number of marked or extreme limitations is counted to determine whether the claimant is eligible" for statutory disability benefits, Encarnacion II, 331 F.3d at 85, Plaintiffs' efforts are misplaced. The Circuit Court's opinion in Encarnacion II addressed the facial validity of the policy, found Chevron deference appropriate to analyzing its validity, and upheld it as sufficient to permit "reasonable methods of giving effect to the 'combined impact' mandate other than by adding limitations across domains." Encarnacion II, 331 F.3d at 86.

To the extent Plaintiffs' intention is, by means of the Dwyer declaration, to frame

genuine issues of fact as to whether the Commissioner's methods "are ineffective either on their face or as applied," id. at 86, their effort fails because Mr. Dwyer's conclusions concerning the SSA's practices lack a competent factual basis in the record. Plaintiffs have failed to present evidence of the SSA's application of the challenged interpretations in actual cases, and the generalized opinions presented in the Dwyer declaration as to the insufficiency of the SSA's regulations and policy to identify "disabled" children and as to the numbers of such children likely excluded by the challenged policy are not tied to any demonstration that the definition of "disability" on which Mr. Dwyer's conclusions are based is consistent with the SSA's regulations or, indeed, with the statutory standard that the SSA is required to implement.

Mr. Dwyer acknowledges in the opening portion of his Declaration that his opinions are based on his "understanding of how the Commissioner of Social Security makes determinations of functional equivalence in children's SSI cases," and that his understanding is derived, not from analysis of actual SSI cases or a study of the testimony of SSA officials but, rather, "from [his] conversations with plaintiffs' counsel and [his] own review of the Commissioner's regulations and other published materials." (Dwyer Decl. ¶6.) Plaintiffs' counsel are not fact witnesses. Rather, they are advocates who have pressed their interpretation of the Commissioner's regulations and their understanding of the impact of the challenged policies before this Court and on appeal in the prior litigation. The policies were upheld as against those arguments and the Second Circuit left open the door for consideration of a factual case concerning the SSA's actual practices. An opinion based on an advocate's hearsay account of an opponent's practices does not a factual case make.

Nor is Mr. Dwyer's reliance on his own reading and interpretation of the

Commissioner's regulations and materials any more efficacious to respond to the question left open by the Circuit. The interpretation of the impact and breadth of such legal materials is for the courts; indeed, the Encarnacion II opinion makes it quite clear that the Circuit Court had studied carefully the relevant regulations and policy materials in reaching its determination as to the facial scope of the regulations and the permissibility of the Commissioner's policies.

Furthermore, as demonstrated in the Commissioner's opposition papers to Plaintiffs' cross-motion, Mr. Dwyer misinterprets the manner in which the SSA regulations operate in connection with childhood disability determinations. (See Mem. of Law in Opp. to Pls.' Cross-Motion, at 30-35.)

Mr. Dwyer's argument that "the presumption that impairments causing less than marked functional limitations have no effect on a child's overall functioning is demonstrably unscientific" both assumes the existence of a "presumption" that is contradicted by the SSA's regulations and ignores the fact that the SSA is working within a statutory framework and deals with determinations of disability for a specific and limited, albeit very important, purpose. The regulations clearly take into account impairments that cause less than marked functional limitations. That they do so within domains of functioning may mean that, in the final analysis, a domain in which the functional limitation (whether attributable to a single impairment, or to the cumulative and interactive effects of several impairments) is less than marked will not support a finding of disability does not mean that the impairments are ignored. See 20 C.F.R. § 416.926a(b). Mr. Dwyer's further discussion of, for instance, the impact of what he posits to be a borderline intelligence level that would not produce a marked limitation in the area of acquiring and using information, even when combined with other cognitive problems, may reflect

legitimate and serious medical and policy concerns as to where definitional lines ought to be drawn in decision making as to the allocation of public resources for the benefit of disabled children. However, neither Mr. Dwyer's declaration nor Plaintiffs' arguments demonstrates that the standards on which he bases his opinion are consistent with Congress' policy choices in crafting the Act.

The Dwyer declaration thus fails to demonstrate Plaintiffs' entitlement to judgment as a matter of law, or even to frame a genuine issue of fact as to whether the Commissioner's actual practices fail to take into account properly the "interactive and cumulative effects of all of the impairments for which we have evidence, including any impairments . . . that are not 'severe,'" and consider such impairments "throughout the disability deterination process" in making functional equivalence determinations under the regulations. See 20 C.F.R. §416.926a(a) (2004);[4] 42 U.S.C.A. § 1382c(a)(3)(G) (West Supp. 2007).

The Commissioner must, in determining whether a child applying for SSI benefits has an impairment which causes the child to exhibit marked and severe functional limitations, "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C.A. § 1382c(a)(3)(G) (West 2007). However, "[i]f the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process." Id. Plaintiffs argue that the plain

---

[4]     The "functional equivalence for children" regulation has been amended since the commencement of this litigation. As the parties' arguments and the prior litigation focused on the pre-amendment provisions the Court refers to the version of the regulation as published in 2004, for clarity, in this opinion.

language of this provision demonstrates that it is not enough that the Commissioner simply acknowledge the existence of an impairment that produces only a moderate limitation, but rather that the Commissioner must give the impairment significant effect throughout the disability determination process. Plaintiffs, focusing on one passage of the Encarnacion II opinion, further argue that they are entitled to summary judgment because, as the Commissioner acknowledges in his papers, the SSA's adjudicators are not permitted to "adjus[t] an otherwise moderate, but nearly marked, limitation in domain A up to fully marked to account for the effect of a limitation in domain B." See Encarnacion II, 331 F.3d at 89; (Mem. In Supp. Of Comm.'s Cross-Motion at 3); (Compl. ¶57). Plaintiffs argue, in essence, that this statement, which is followed by a statement at the beginning of the next section of the Encarnacion II opinion that "the flexibility to account for cumulative effects we have just described is likely essential to a permissible interpretation of the Act," is in effect a holding that the sort of cross-domain combination of less than marked limitations that Plaintiffs advocate is required.

This Court has studied carefully the parties' arguments, the Encarnacion II majority and concurring opinions and the underlying regulations whose implementation is the subject matter of this litigation. Having done so, the Court concludes that reading the sentence cited by Plaintiffs as embodying the holding of Encarnacion II – and thus interpreting the decision as requiring a layer of cross-domain combination to validate the domain-based analytical system created under the regulations – is inconsistent with the analysis carefully laid out by the Circuit in that opinion. Notably, the Circuit Court ruled that, "although SSA may choose not to add together moderate limitations across domains to create the equivalent of a marked limitation, it does not necessarily follow that those impairments underlying the omitted

moderate limitations are 'not considered throughout the disability determination process.'"[5] The

Circuit held that it was not necessary for the Commissioner to conduct a cross-domain analysis if

there were an opportunity for consideration and recognition of the relevant underlying

impairment(s) in the Commissioner's current domain-based functional limitation determination,

which is designed to consider the cumulative impact, within each separate domain, of all of a

child's impairments. Encarnacion II, 331 F.3d at 89.

Two key terms, defined by the Circuit in Encarnacion II – are central to a proper

understanding of the regulations and policy at issue here, as well as of the holding of

Encarnacion II. As the Encarnacion II Court explained:

> The new regulations . . . introduced a new set of terminology, which it will be
> useful for the reader to distinguish throughout the remainder of this opinion. An
> 'impairment' is the physical ailment affecting the applicant. See 42 U.S.C. §
> 1382c(a)(3)(A); 20 C.F.R. § 416.921-23. A 'limitation' is the functional
> consequence of an impairment or combination of impairments. See 42 U.S.C.  §
> 1382c(a)(3)(C)(i); 20 C.F.R. § 416.924.

Id., 331 F.3d at 83 n.2. The regulation and policies at issue here concern the determination of

"whether [an] impairment, alone or in combination with another impairment, 'medically equals,

or functionally equals'" the severity of conditions listed in an appendix to the regulations. See

id. at 84 (citation omitted) and n.3. The regulations provide for the determination of functional

equivalency by reference to the severity of the *limitations* arising from an applicant's

---

5       The Circuit did suggest that the Commissioner's refusal to conduct a cross-
        domain analysis could be an unlawful interpretation of the regulations "if
        plaintiffs could demonstrate that the defined domains omitted some significant
        aspect of pertinent juvenile functioning, and that there was no flexibility to
        account for the omission within other domains." Encarnacion II, 331 F.3d at 89.
        However, Plaintiffs make no such evidentiary proffer and disclaim any such
        argument in this case. (See Pls. Reply Mem. at 7.)

*impairments* "'in terms of six domains'" of functioning. Id. (citation omitted); see 20 C.F.R. §
416.926a. The Encarnacion II Court recognized that, under the Commissioner's policy that is
again challenged here, "two or more moderate *limitations* in different domains of functioning
cannot be treated as the equivalent of, or 'added up to equal[,] a "marked" limitation'" and that,
"[i]n effect, once the examiner has assessed the level of *limitation* in each of the claimant's
domains, moderate *limitations* drop out of the equation, and the number of marked or extreme
limitations is counted to determine whether the claimant is eligible [for SSI benefits]."
Encarnacion II, 331 F.3d at 85 (citations omitted; emphasis supplied). The Commissioner
reasoned, as the Encarncion II Court noted, "that 'to revise the disability standards to include
children with *impairments* of less than listing-level severity (e.g., one marked and one moderate
limitation or three moderate limitations in "crucial" areas) would, in essence, result in the same
level of severity we used when we performed an IFA under the prior law.'" Id. (citation omitted;
emphasis supplied).

        Against this background explanation of the challenged policy, the Encarnacion II
Court stated that it "read the Commissioner's regulations and policy to give some effect to each
of a claimant's *impairments* throughout the disability determination process," noting that the
agency "will consider a single impairment in every domain it affects, no matter the degree" and
"will assess the cumulative impact of all *impairments* relevant to a particular domain in assessing
a child's cumulative functional *limitation* in that domain." Id. at 88 (emphasis supplied). This
consideration of all of the effects of each impairment led the court to observe that, as
contemplated by the regulations, "the existence of submarked *limitations* [arising from an
impairment] in other domains may influence the level of *impairment* SSA finds in any one given

domain." Id. (emphasis supplied). In this last description of the regulation provision, the court seems inadvertently to have referred to a finding of "impairment" in a domain rather than "limitation" in a domain. Its earlier definitions of the relevant terms and painstaking explanation of the regulations and policies lead this Court to conclude that the intended meaning of the statement was to acknowledge that, under the Commissioner's policy, an impairment that may produce only a less than marked limitation in a particular domain may, when its interactive effects are considered in combination with other impairments affecting another domain, contribute to a marked or greater finding in that other domain. This appears to be the thrust of the Circuit's later comment that "it appears that the regulations permit SSA to increase a non-marked limitation up to marked to reflect the impact that other non-marked impairments may have on the claimant's overall level of functioning," in that the concept of a "non-marked impairment" is anomalous under the nomenclature established by the regulations. See id.

A similarly anomalous statement appears on page 89 of the Encarnacion II opinion, where the court stated: "Thus, we conclude that under current SSA regulations ALJs retain the power to account for the existence of *non-marked limitations* in the disability determination process notwithstanding the formal bar on combining *non-marked impairments*." Id. (emphasis supplied). The interchange of the terms "impairment" and "limitation" in the court's discussion appears to have led Plaintiffs to believe that Encarnacion II, despite its affirmance of the district court decision and its recognition that the Commissioner's policy precludes the combination of sub-marked limitations in unrelated domains to support a finding of disability, nonetheless mandated just such a cross-domain combination methodology.

Plaintiffs similarly misconstrue the Encarnacion II Court's discussion of United

States v. Zebley, 493 U.S. 521 (1990), as indicative of a finding that failure to cross-combine sub-marked limitations from different domains constitutes affording "zero weight" to impairments that produce less than marked limitations in one or more domains. In Zebley, the Supreme Court struck down an SSA disability determination modality that examined only medical equivalence and precluded consideration of functional equivalence in assessing disability, such that an impairment that produced only a functional limitation, rather than one listed in a medical equivalent checklist, was given "no effect at all" in the disability determination. The Zebley Court held that the challenged practice did not "sufficiently 'consider the combined effect'" of such impairments. Encarnacion II, 331 F.3d at 90. The Encarnacion II Court, invoking Zebley, stated that it "[could ]not accept an interpretation of 'consider the combined effect' where the impairment is assigned zero weight in the ultimate decision whether or not to award benefits" and that such an approach would fail to comply with the statutory mandate to consider "'the combined impact of [all of the claimant's] impairments *throughout* the disability determination process.'" Id. (quoting 42 U.S.C. § 1382c(a)(3)(G)).

Plaintiffs reiterate their position that the aspect of the Commissioner's policy in which, as the Encarnacion II Court put it, "moderate limitations drop out of the equation" after the limitations in each functional domain have been assessed[6] is as violative of the statutory mandate as was the SSA policy at issue in Zebley. Encarnacion II holds to the contrary, however:

> [W]e are satisfied that the agency's policy of considering the combined impact of an impairment within every affected domain but not adding across domains is not a plainly erroneous procedure for identifying children who suffer from the sort of

---

[6]      Encarnacion II, 331 F.3d at 85.

'marked and severe functional limitations' that render them disabled, 42 U.S.C. § 1382a(3)(C)(i), particularly since SSA regulations are flexible enough to allow ALJs to 'look comprehensively at the combined effects of [a claimant's] impairments,' 20 C.F.R. § 416.924a(a)(4) (2002).

Encarnacion II, 331 F.3d at 90.

Thus, while it is true that, as alleged in the Complaint, the Commissioner does not permit ALJs to "adjust the level of a claimant's limitation within one or two domains to . . . account for the interactive and cumulative effect of limitations in other domains," (Compl. ¶57), Plaintiffs are not entitled to judgment as a matter of law because neither the Act nor Encarnacion II requires such a cross-domain adjustment. What the law requires is that the SSA account for the interactive and cumulative effect of all of the claimant's *impairments*, and that it give weight to all of a claimant's *impairments* in its final determination of disability. While the Commissioner's methodology holds moderate limitations, and the absence of two marked limitations, insufficient to meet the statutory definition of disability, the SSA's practices as described in Encarnacion II and in the record indicate that the SSA evaluates each impairment and weighs each impairment's interactive and cumulative effect in making its final disability assessment, as required by law. Plaintiffs' proffered evidence fails to frame any genuine issue of fact as to whether the SSA violates these requirements in practice. For the same reasons, Plaintiffs have also failed to demonstrate the existence of the class they seek to represent, namely one composed of persons denied benefits by reason of the application of a "policy of forbidding adjudicators to assign any weight in the final determination of disability to impairments imposing 'less than marked' functional limitations . . ."

Accordingly, Plaintiffs' cross-motion for summary judgment is denied, and the

Commissioner's cross-motion for summary judgment is granted.

Plaintiffs' Motion for Leave to File an Amended Class Action Complaint

    Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiffs move the Court for leave to file an amended class action complaint. The proposed pleading differs from the existing Complaint only insofar as it would add Ana Serrano o/b/o Esteban Martinez as an additional class representative to the case. Plaintiffs also seek to have Ms. Martinez formally added as a moving party on Plaintiffs' pending motion for class certification. Because, as explained above, the proposed class has no members and the action fails on its merits, the proposed amendment would be futile. Accordingly, the motion is denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification (Docket entry No. 6) is denied. Defendant's cross-motion for summary judgment (Docket entry No. 31) is granted insofar as it seeks dismissal of the Complaint on the merits. Plaintiffs' cross-motion for summary judgment (Docket entry No. 46) is denied. Finally, Plaintiffs' motion for leave to file an amended class action complaint (Docket entry No. 21) is denied.

The Clerk of Court is respectfully requested to enter judgment in Defendant's favor and close this case.

SO ORDERED.

Dated: New York, New York
        June 22, 2007

LAURA TAYLOR SWAIN
United States District Judge